Patrick M. Flatley
United States Bankruptcy Judge
Dated: Tuesday, June 07, 2011 9:12:44 AM

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GRAND CENTRAL BUILDING, LLC, | ) | Case No. 10-638 |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| FIRST UNITED BANK AND TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 10-68 |
| | ) | |
| MONROE P. WARNER, JANE M. WARNER, ANDREW M. WARNER, DEBORAH L. WARNER, JULIE KNOTTS f/k/a JULIE K. WARNER, KRISTIAN E. WARNER, and JOYCE G. WARNER, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

First United Bank and Trust loaned Grand Central Building, LLC (the "Debtor") $2,200,000 on August 31, 2000. As of May 27, 2010, First United contends that the Debtor was in default and the amount owed on the loan as of that date was $1,083,125.40. Monroe, Jane, Andrew, Deborah, Krisitan, and Joyce Warner, along with Julie Knotts (collectively the "Warners"), all signed individual commercial guaranties of the Debtor's performance and prompt payment. First United filed this adversary proceeding seeking a judgment against the Warners on their commercial guaranties.

The Warners seek to dismiss First United's adversary complaint on the basis that this court lacks subject matter jurisdiction to adjudicate a dispute between a creditor of the Debtor and non-

Page 1 of 6

debtor parties.

For the reasons stated herein, the court will deny the Warners' motion to dismiss.

## I. STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). The burden of establishing subject matter jurisdiction is on the party asserting it. *Id.*

For purposes of their motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), Fed. R. Bankr. P. 7012, the Warners do not contest the facts as set forth in First United's complaint. Consequently, the Warners' motion to dismiss concerns the facial sufficiency of First United's complaint. Therefore, for purposes of the Warners' motion to dismiss, the court will accept the allegations in the complaint as true, construing the facts most favorably to First United, and will not look beyond the face of the complaint to determine jurisdiction. *E.g.*, *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) ("When a defendant makes a facial challenge to subject matter jurisdiction, 'the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration.' In that situation, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.") (citation omitted).

## II. BACKGROUND

According to First United's complaint, it loaned the Debtor $2,200,000 on August 31, 2000. The August 31, 2000 note was modified twice, on April 1, 2002, and December 1, 2003. The obligations under the note, as modified, were guaranteed by the Warners pursuant to separate guarantee agreements executed on August 31, 2000.

The Debtor is in default on its loan obligations to First United by its failure to timely make installment payments. As a result of the default, First United has declared that the entire unpaid principal balance and all accrued interest on the indebtedness is due immediately. At the time of the May 27, 2010 complaint, First United contends that it is owed the principal amount of $1,063,207.57, together with accrued interest, late charges, and fees of $19,917.83, for a total of $1,083,125.40.

Pursuant to the Warners' guarantee agreements, they "guarantee[d] at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of all [i]ndebtedness. . . ." The Warners have failed to pay First United all of its costs

and expenses, including attorney's fees, owed under the guaranty agreements.

The Debtor filed this Chapter 11 case on February 19, 2010. It is owned by Kristian Warner (25%), Ben Warner (25%),[1] Mac Warner (25%), and Monty Warner (25%). Related Chapter 11 cases were filed for Augusta Apartments, LLC, Case No. 10-303, and McCoy 6, LLC, Case No. 9-304. The principals of the Debtor are also principals of Augusta Apartments and McCoy 6. Following a court hearing on July 21, 2010, a Chapter 11 trustee was appointed in all three cases.

### III. DISCUSSION

The Warners contend that First United's complaint is between a creditor of the Debtor and non-debtor guarantors; thus, they assert that the bankruptcy court has no subject matter jurisdiction to adjudicate the complaint.

District courts have original and exclusive jurisdiction of all cases under title 11 and original, but non-exclusive jurisdiction of all civil proceedings arising under, arising in, or related to a case under title 11. 28 U.S.C. § 1334. The District Court for this District has referred this jurisdictional grant to the bankruptcy court, as authorized by § 157(a). A close examination of bankruptcy court jurisdiction under § 1334 is important because the "jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995).

Controversies arise in title 11 when they "'are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy[; i]n other words, a 'controversy arises in Title 11' when 'it would have no practical existence but for the bankruptcy.'" *Grausz v. Englander*, 321 F.3d 467, 471 (4th Cir. 2003) (citations omitted). Claims arise under title 11 if the claims "clearly invoke substantive rights created by bankruptcy law." *Glinka v. Federal Plastics Mfg., Ltd. (In re Housecraft Indus. USA, Inc.)*, 310 F.3d 64, 70 (2d Cir. 2002). A proceeding is related to a bankruptcy case when "the outcome of that proceeding could conceivably have any effect on the estate. . . [and] could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively). . . ." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). *See also Celotex Corp.*, 514 U.S. at 308 n.6 (1995) ("[W]hatever ['related to'] test is used, these cases make clear that bankruptcy courts have no jurisdiction over proceedings that have no

---

[1] Benjamin F. Warner filed a Chapter 7 case in this court, No. 10-888. First United did not name Benjamin Warner in its complaint under the belief that he is protected by the automatic stay.

effect on the estate of the debtor."); *New Horizon of N.Y. LLC v. Jacobs*, 231 F.3d 143, 151 (4th Cir. 2000) ("This court has adopted the *Pacor* related to test . . . .").

Here, both the Warners and First United agree that First United's complaint is not one that "arises in" or "arises under" title 11. Thus, the parties only dispute whether First United's complaint is "related to" the Debtor's bankruptcy case.

Pursuant to 28 U.S.C. § 157(b)(2)(A), matters concerning the administration of a bankruptcy estate are, at a minimum, "related to" a case under title 11. In determining whether the outcome of an adversary complaint will have a conceivable effect on the administration of the bankruptcy estate, the key word is "conceivable." "[T]he *Pacor* test does not require certain or likely alteration of the debtor's rights, liabilities, options or freedom of action, nor does it require certain or likely impact upon the handling and administration of the bankruptcy estate. The possibility of such alteration or impact is sufficient to confer jurisdiction." *Owens-Illinois, Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619, 626 (4th Cir. 1997).

Here, First United asserts that it has a claim against the Debtor's bankruptcy estate for at least $1,083,125.40. Should First United be successful on its complaint against the Warners on their promise to guaranty the obligations of the Debtor to First United, then First United's asserted claim against the Debtor's bankruptcy estate may be reduced or even eliminated. If the Warners pay First United pursuant to the terms of the loan between it and the Debtor, then the Warners may be subrogated, under 11 U.S.C. § 509, to First United's rights against the Debtor. Should the Warners be unable to pay First United in full, then, under § 509(c), their subrogation claim against the Debtor may be subordinated to First United's claim until such time as First United is paid in full. Moreover, should it be determined that the Warners received consideration for the claim being held by First United, the Warners may not have any subrogation rights against the estate. § 509(b)(2). Thus, a number of conceivable possibilities exist should First United be successful: the Warners may hold a subrogated secured claim against the Debtor, the Warners may hold a subrogated secured claim that is subordinated to First United's asserted claim, or the Warners may be obligated to pay the claim of First United without having any subrogation rights. Moreover, because several of the Warners are also principals of the Debtor, or related to principals of the Debtor, it may be much easier, should the Chapter 11 trustee propose a plan of reorganization, to work with the Warners (as opposed to First United) in proposing a Chapter 11 plan capable of being confirmed, or in selling property free and clear of liens and interests.

Consequently, the court finds that First United's adversary complaint against the Warners, who guaranteed the Debtor's obligations to First United, is "related to" the Debtor's bankruptcy case because the outcome of First United's complaint has "conceivable effects" on the administration of the Debtor's bankruptcy estate.  *See, e.g.*, *Widewaters Roseland Center Co. v. The TJX Companies, Inc.*, 135 B.R. 204 (N.D.N.Y. 1991) (holding that a lawsuit between a creditor of the debtor and the non-debtor guarantors is significantly connected to the bankruptcy case such that it fell within the court's bankruptcy jurisdiction); *Apex Investment Associates, Inc. v. TJX Companies, Inc.*, 121 B.R. 522, 525 (N.D. Ill. 1990) (Suit seeking to enforce a claim against a guarantor of the debtor is "related to" the debtor's Chapter 11 bankruptcy proceeding because if the suit is successful, the guarantor will likely seek indemnification from debtor, "a result which unquestionably impacts upon the administration of the [debtor's] estate.");[2] *In re Spillman Dev. Group, Ltd.*, No. 05-14414, 2007 Bankr. LEXIS 2151 at *17-18 (Bankr. W.D. Tex. June 19, 2009) ("The amount of any such deficiency will conceivably affect the administration of the bankruptcy estate by affecting the amount of Fire Eagle's claim in this case, thereby affecting the percentage distributions to other creditors in the case, and this will be true whether the Guarantors are able to file their own subrogation claims against the estate pursuant to § 509 . . . .").

Finally, both First United and the Warners assert that First United's complaint is a non-core proceeding.  On that basis, the Warners assert that the court lacks subject matter jurisdiction. Moreover, the Warners state that they have a right to a trial by jury and do not consent to the bankruptcy court holding a jury trial.

Even accepting the parties' agreement that First United's adversary complaint is non-core, the fact that the underlying claim may be a core or non-core is a secondary distinction to be made after a court determines that subject matter jurisdiction exists over the dispute.  *E.g.*, *Abner v. Mate*

---

[2] *Apex Investment Associates* was subsequently criticized in the case of *In re Salem Mills*, 148 B.R. 505 (Bankr. N.D. Ill. 1992), which held that the bankruptcy court lacked subject matter jurisdiction to adjudicate a dispute between a creditor of the debtor and the non-debtor guarantors.  The "related to" test used by *Salem Mills*, however, is the test articulated by the Court of Appeals for the Seventh Circuit.  In the view of *Salem Mills*, the Seventh Circuit requires that the "related to" test be "narrowly interpreted" and it is only applicable if the outcome of the dispute "'affects the amount of property available for distribution or the allocation of property among creditors." *Id.* at 507.  Because the Court of Appeals for the Fourth Circuit has adopted the broad, "related to" jurisdictional test of *Pacor*, the decision in *Salem Mills* is not persuasive.

*Creek Loading, Inc. (In re Mid-Atlantic Res. Corp.)*, 283 B.R. 176, 186 (S.D.W.V. 2002) ("[A]n assertion that the action is a core or non-core proceeding is not an allegation of federal jurisdiction; rather, it relates to the power of the bankruptcy court to resolve the issues brought after jurisdiction is established."). If the Warners have a right to a jury trial, that does not affect the bankruptcy court's subject matter jurisdiction under 28 U.S.C. § 1334; rather, it only affects whether the jury trial may be held in the bankruptcy court or the district court. § 157(e). Considering that only one of the Warner defendants has filed an answer to First United's complaint, resolving issues related to a jury trial are premature at this time.

## IV. CONCLUSION

For the above-stated reasons, the court will enter a separate order pursuant to Fed. R. Bankr. P. 7058, that denies the Warners' motion to dismiss.